318 P.2d 588

Elmer TIEGS, Plaintiff-Appellant,

v.

Ray PATTERSON, Defendant-Respondent.

No. 8579.

Supreme Court of Idaho.

Nov. 21, 1957.

Rehearing Denied Dec. 16, 1957.

Laurence N. Smith, Dean E. Miller, Caldwell, for appellant.

Milo Axelsen, Nampa, for respondent.

McQUADE, Justice.

Plaintiff-appellant had been a director of Nampa-Meridian Irrigation District, a duly organized irrigation district in Ada and Canyon Counties, with its office at Nampa, Idaho. An election was conducted December 11, 1956, to choose a director from Division No. 3 of the district, which division appellant then represented. Both the appellant and the defendant-respondent were nominated for the office, and their names appeared on the ballot.

The board canvassed ballots December 17, 1956. Results of this canvass are not shown, but appellant demanded a re-count. Appellant alleges the re-count showed he received two votes more than respondent.

Appellant further alleges at the time of the re-count the chairman of the Board of Directors declared he, appellant, had been duly elected; but instead of issuing appellant a certificate of election, the secretary of the district issued a certificate of election to respondent. Appellant alleges the respondent then filed his official bond, took the oath of office, and entered upon the duties of director.

Appellant brought this action for usurpation of office. Respondent filed a general demurrer. The court held the complaint did not state a cause of action, and ordered it dismissed. This appeal is from the judgment of dismissal.

█ This case was decided by the District Court on demurrer; therefore the facts alleged in the complaint must be taken as true. J. C. Penney Co. v. Diefendorf, 54 Idaho 374, 32 P.2d 784; Hoffman v. Barker, 79 Idaho 339, 317 P.2d 335.

There are two statutes over which this controversy revolves. I.C. sec. 6–602 provides:

"An action may be brought in the name of the people of the state against any person who usurps, intrudes into, holds or exercises any office or franchise, real or pretended, within this state, without authority of law. Such action shall be brought by the prosecuting attorney of the proper county, when the office or franchise relates to a county, precinct or city, and when such office or franchise relates to the state, by the attorney general; and it shall be the duty of the proper officer, upon proper showing, to bring such action whenever he has reason to believe that any such office or franchise has been usurped, intruded into, held or exercised without authority of law. Any person rightfully entitled to an office or franchise may bring an action in his own name against the person who has usurped, intruded into, or who holds or exercises the same."

The second statute is I.C. sec. 34–2001, which provides:

"The election of any person to any public office * * * may be contested:

"1. For malconduct, fraud, or corruption on the part of the judges of election in any precinct, township or ward, or of any board of canvassers, or any member of either board sufficient to change the result.

"2. When the incumbent was not eligible to the office at the time of the election.

"3. When the incumbent has been convicted of felony, unless at the time of the election he shall have been restored to civil rights.

"4. When the incumbent has given or offered to any elector, or any judge, clerk or canvasser of the election, any

bribe or reward in money, property or anything of value for the purpose of procuring his election.

"5. When illegal votes have been received or legal votes rejected at the polls sufficient to change the result.

"6. For any error in any board of canvassers in counting votes or in declaring the result of the election, if the error would change the result.

"7. When the incumbent is in default as a collector and custodian of public money or property.

"8. For any cause which shows that another person was legally elected."

Under the common law remedy of quo warranto, the right of an officer to his office, or the authority by which an officer acted, could be inquired into. It is quite apparent the Legislature of the State of Idaho adopted this writ of inquiry, and not only made provision for governmental authority to inquire into the authority by which one might hold office, but, in addition, conferred this right upon an individual. At the common law in England, officers were not elected as they are in the United States today, but received their grants of authority in some line from the monarch or his duly appointed authority.

For the purpose of inquiring into the regularity of election proceedings, and to insure that those proceedings conform to the statutory requirements for the holding of elections in the State of Idaho, a method was enacted by the legislature whereby an individual could bring action to determine if such elections were held in accordance with those statutory requirements.

Appellant advances the proposition that the two remedies are separate and distinct. On the other hand, the respondent points to a line of authority which he contends makes any inquiry into the authority by which an officer holds office an exclusive remedy under the election contest statutes.

The election contest statute requires an action thereunder to be commenced within 20 days after the votes are canvassed (I.C. sec. 34–2008), whereas the usurpation of office statute (I.C. sec. 6–602) does not have this limitation of time for the commencement of the action.

From the facts hereinbefore set forth, it is to be seen the complaint of the appellant was filed much later than the 20-day period. It is obvious that the trial judge concluded the action was not brought in time when he stated in the memorandum opinion that the appellant should have an opportunity to show, if he could, why he was legally prevented from filing an election contest within the 20 days provided by statute.

In Toncray v. Budge, 14 Idaho 621, 95 P. 26, 29, this Court pointed out:

"* * * The territorial legislature, at the session of 1887, enacted sections 4612 to 4619, inclusive, which are practically a codification of the common-law quo warranto, with some additions and

enlargement, both as to subject-matter and authority and jurisdiction of the courts."

The Court continued:

"* * * it must be conceded, we think, that we have on the statute books two remedies for reaching the ineligibility of a person to hold office; one by contest under the provisions of the foregoing act [Act of February 2, 1899, sec. 119 (Sess.Laws 1899, p. 60)]; the other by information in the nature of *quo warranto,* under sections 4612 to 4619, Rev.St.1887."

The Court also said:

"* * * Under the contest law no one may be a contestant or plaintiff who is not at the time an elector of the state, county, or district in which the officer was elected. On the other hand, proceeding under information, the action must be prosecuted in the name of the people, and on relation of the Attorney General or county attorney, as the case may be. These statutes authorizing proceedings against usurpers and intruders into office, are in the interest of and for the protection of the people at large, and no person, except one who is himself entitled to the office, is supposed to have any more interest in such a proceeding than any other citizen. The remedy is therefore only available to the people, except in the one single instance, under section 4612, where a

person originally entitled to the office may bring an action in his own name against a usurper. Another distinction to be noted between these two provisions is that a contest is directed toward facts and conditions that exist at the time of the election of the incumbent or that transpired at the election itself. On the other hand, the statutes providing for information against usurpers and intruders into office have reference to conditions that exist at the time the action is brought. * * *"

The Court sets out Rev.Stat. sec. 4612, which is nearly identical to our present I.C. sec. 6–602, and states:

"* * * The latter provision [permitting the person rightfully entitled to the office to bring action in his own name] was evidently added to the section for the purpose of enabling one who was appointed to an office, or for any cause was not in position to contest the election, to maintain his action directly against the person who is unlawfully holding the office and exercising the functions thereof. * * *"

To further brighten the distinction, the State of Tennessee has drawn what appears to be a clear-cut line between quo warranto and election contest statutes. In State ex rel. Pike v. Hammons, 163 Tenn. 294, 43 S.W.2d 395, Id., 166 Tenn. 469, 63 S.W.2d 660, the relator brought quo warranto proceedings and the defendant filed a cross-bill.

Each of the parties claimed to have been elected and to have a certificate of election, but Hammons alleged Pike received his certificate by duress. On the face of the returns, Hammons won by one vote. The trial court found in favor of Hammons. The Supreme Court said:

"* * * this was not an election contest suit, since relator did not propose to go behind the returns * * *.

"It is plausibly argued that, upon the issuance of the certificate to relator, it was incumbent upon Hammons to institute an election contest. We think otherwise where the certificate so issued was void. Hammons had a right to disregard it * * *."

In the more recent case of State ex rel. Bryant v. Maxwell, 189 Tenn. 187, 224 S.W.2d 833, 836, the Court again announced the rule:

"* * * this Court from an early date has recognized in cases where it was not necessary to go behind the election returns the jurisdiction of the Chancery Court in a suit by quo warranto proceedings which challenged the legal right of a party to hold a public office. * * *"

California also adopts the distinction in People ex rel. Budd v. Holden, 28 Cal. 123:

"It is first claimed by the appellant that the District Court had no jurisdiction in the premises, and that the only remedy in cases like the present is under the statute which prescribes the mode and manner of contesting elections. * * * No proposition could be more untenable. It is true that the Act providing the mode of contesting elections confers upon any elector of the proper county the right to contest, at his option, the election of any person who has been declared duly elected to a public office, to be exercised in and for such county. But this grant of power to the elector can in no way impair the right of the people, in their sovereign capacity, to inquire into the authority by which any person assumes to exercise the functions of a public office or franchise, and to remove him therefrom if it be made to appear that he is a usurper having no legal title thereto. The two remedies are distinct, the one belonging to the elector in his individual capacity as a power granted, and the other to the people in the right of their sovereignty. Title to office comes from the will of the people as expressed through the ballot-box, and they have a prerogative right to enforce their will when it has been so expressed by excluding usurpers and putting in power such as have been chosen by themselves. To that end they have authorized an action to be brought in the name of the Attorney-General, either upon his own suggestion or upon the complaint of a private party against any person who usurps, intrudes into, or

unlawfully holds or exercises any public office, civil or military, or any franchise within this State. It matters not upon what number of individual persons a right analogous in its results when exercised may have been bestowed, for the power in question none the less remains in the people in their sovereign capacity. * * * "

The Court said further:

" * * * The action is in no legal sense under the control of the relator. It was brought in the name of the people and to enforce their will as expressed through the ballot box and not merely to redress the wrongs or enforce the rights of the relator. * * "

California elaborated further on this proposition in Powers v. Hitchcock, 129 Cal. 325, 61 P. 1076. This was an election contest, in which the Court held the complaint did not state a cause of action because there were two possible methods for the defendant to place his name on the ballot, and the complaint alleged only that he did not comply with one of them. There is dictum that:

" * * * There are two separate and distinct methods provided in the Code of Civil Procedure to test the title to an office. The first is by proceedings in the nature of quo warranto against any person who usurps or intrudes into a public office. * * * The second is by contesting the election * * *."

To support his contention that the election contest is an exclusive remedy, the respondent cites State ex rel. Abercrombie v. District Court, 37 N.M. 407, 24 P.2d 265. The Abercrombie case is cited with approval in Harrison v. Board of County Commissioners, 68 Idaho 463, 198 P.2d 1013. In the first place, State ex rel. Abercrombie v. District Court (N.M.) is not applicable in that the Court concludes the quo warranto action cannot be brought by an individual, and secondly that the election contest procedure was an exclusive private remedy. This conclusion is not tenable in Idaho, as the usurpation of office statute specifically grants the right of action as a private remedy. When this Court cited State ex rel. Abercrombie v. District Court with approval, the matter before the Court was an election contest, and therefore the provisions of the law of this state applicable to election contests were the appropriate and exclusive remedy. See also State ex rel. Rainwater v. Ross, 245 Mo. 36, 149 S.W. 451, Ann.Cas.1913E, p. 982. The question before the Court at this time goes only to the issuance of a certificate of election after the votes are counted.

It cannot be said that any discretion would be left for the issuance of a certificate of election where the votes had been tabulated and the only act left to be done was the issuance of a certificate. This would not be an act of discretion, but would be a ministerial duty, and could not be considered in any way determinative of the election or the conduct thereof. This prop-

osition is clearly demonstrated in the case of Sparkman v. Saylor, 180 Ky. 263, 202 S.W. 649, 651. Saylor had received a majority of votes in an election for justice of the peace, but the election commissioners refused to issue him a certificate of election because he was late in filing a statement of expense. He brought action for a mandatory injunction requiring the board to issue the certificate. After holding the time for filing a statement of expense was directory, not mandatory, the Court said:

"An election contest is a distinct and peculiar proceeding, required to be filed in the time and manner prescribed by law. This action is not such a proceeding, as between the plaintiff and the election commissioners, and the duties of the election commissioners are purely ministerial * * *."

■ The issuance of the certificate by the secretary of the irrigation district carried with it only prima facie evidence of the respondent's right to the office; but the real right to the office rested upon the will of the electorate as shown by the tabulation of their ballots. In People ex rel. Wicks v. Jones, 1862, 20 Cal. 50, the Court said:

"* * * The certificate of election * * * is only *prima facie* evidence of the defendant's right to the office. The real right or title to the office comes from the will of the voters, as expressed at the election. If the office was in fact given by the voters to another, the possession by the defendant of the certificate affords him, at most, but a color of title, and does not invest him with the right which belongs to the other. * * *"

■ It is to be concluded the appellant, alleging in his complaint he had received a majority of the votes cast, has brought this action under the usurpation statute, and has not in anywise contested the election. The District Court is directed to reinstate the action, overrule the demurrer, and allow the defendant time to answer or further plead to the complaint.

Costs to appellant.

KEETON, C. J., and PORTER, TAYLOR and SMITH, JJ., concur.