614 P.2d 417

The **PEOPLE** of the State of Idaho, ex rel., Gordon S. **NEILSON**, Special Prosecuting Attorney, Gooding County, State of Idaho, Plaintiff-Appellant,

v.

Donald J. **WILKINS**, Defendant-Respondent.

No. 12893.

Supreme Court of Idaho.

July 23, 1980.

David H. Leroy, Atty. Gen., Warren Felton, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Peter J. Boyd and Phillip M. Barber of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendant-respondent.

BEEBE, Judge Pro Tem.

In June, 1976, defendant-respondent Wilkins filed a petition for election to the Gooding County Board of Commissioners from Commissioner District No. 1. After the primary, Wilkins was told he would have to live within District No. 1 to be eligible for the election. He thereafter swore under oath that he had moved to a location within the district, giving the address of an abandoned theater as his residence. He also voted in the precinct where the theater is located. Wilkins was elected in November, 1976, and sworn in the following January. In February, 1977, the district boundaries where changed such that Wilkins' residence was then located in District No. 1. As the Gooding County Prosecutor declined to prosecute Wilkins, the Office of the Attorney General appointed a Special Prosecutor who filed a complaint seeking Wilkins' removal from office pursuant to I.C. § 6–602 in June of 1977. During these occurrences, Wilkins has continued to live in his home.

The State sought to remove Wilkins from office pursuant to I.C. § 6–602, and to impose costs and a maximum $5,000.00 fine, pursuant to I.C. § 6–608. Dismissing the State's action, the district court held that I.C. § 6–602 only applied to conditions existing at the time the action is brought. When the action was filed in June, 1977, Wilkins was elected by the majority, certified by the proper authorities, and a resident of the Commissioner District for which

he was elected. I.C. § 6–602 was therefore found inapplicable. The district court awarded defendant $2,515.50 for attorney fees and costs, which Gooding County paid. The State appeals the decision and the award of attorney fees and costs.

I.C. § 6–602[1] is a quo warranto proceeding whereby the State, suing on behalf of the people, challenges the authority of an official to hold office. *See Tiegs v. Patterson*, 79 Idaho 365, 318 P.2d 588 (1957); *Toncray v. Budge*, 14 Idaho 621, 95 P. 26 (1908). It has long been established that quo warranto proceedings refer to the "conditions that exist at the time the action is brought." *Toncray v. Budge*, 14 Idaho at 639, 95 P. at 31; *see Tiegs v. Patterson, supra*. In the case at bar, the State did not file suit until June, 1977, four months after the district boundaries were changed. At that time Wilkins was a resident of Commissioner District No. 1. Because of the reapportionment in February, 1977, there were no impediments to Wilkins' status as a Commissioner in June, 1977, when the State first brought this action.

The State next argues that the February, 1977, redistricting was invalid and therefore Wilkins was not a resident of Commissioner District No. 1 in June. The Board of Commissioners has the power to alter the commissioner districts. *See* I.C. § 31–704. Where the Board of County Commissioners acts on matters within its jurisdiction and no appeal is taken, then the act becomes final and is not subject to collateral attack. *Harrison v. Board of County Comm'rs*, 68 Idaho 463, 198 P.2d 1013 (1948); *Udy v. Cassia County*, 65 Idaho 585, 149 P.2d 999 (1944); *cf. State v. Clark*, 88 Idaho 365, 377, 399 P.2d 955, 962 (1965) (action by Board of County Commissioners

"must be presumed valid until the contrary is shown"). In the case at bar, no appeal was taken from the County Commissioners' reapportionment of the districts. That action, therefore, is final and the State cannot collaterally attack it.

The State also appeals the award of costs and attorney fees to defendant. The Gooding County Board of Commissioners, not the State, is the public entity responsible for paying the fees. The Board acknowledged its debt to defendant, paid it and opposed the State's appeal. (Indeed the reason the State had to appoint a special prosecutor is that no one in Gooding County supported the quo warranto proceeding.) It is a matter of law that a party who does "anything which savors of acquiescence in a judgment cuts off the right of appellate review." *Iseman v. Kansas Gas & Elec. Co.*, 222 Kan. 644, 567 P.2d 856, 862 (1977); *see Pixley Lumber Co. v. Woodson*, 556 P.2d 596 (Okl.1976). In this case, by voluntarily satisfying the debt incurred by the quo warranto proceeding, the County has acquiesced to the judgment. That portion of the judgment regarding costs and attorney fees therefore cannot be appealed.

The judgment of the trial court must therefore be affirmed. Costs to respondent.

DONALDSON, C. J., and BISTLINE, J., concur.

BAKES, Justice, dissenting:

Sixty years ago the Supreme Court of Idaho had this to say about the predecessor to I.C. § 6–602: "This is not a *quo warranto* proceeding under the common law. It is usually called a proceeding in the nature of *quo warranto* . . . ." *People v. Burnham*, 35 Idaho 522, 525, 207 P. 589, 590 (1922). Such being the case, we should

---

1. 6–602. *Actions for usurpation of office.*—An action may be brought in the name of the people of the state against any person who usurps, intrudes into, holds or exercises any office or franchise, real or pretended, within this state, without authority of law. Such action shall be brought by the prosecuting attorney of the proper county, when the office or franchise relates to a county, precinct or city, and when such office or franchise relates to the state, by the attorney general; and it shall be the duty of the proper officer, upon proper showing, to bring such action whenever he has reason to believe that any such office or franchise has been usurped, intruded into, held or exercised without authority of law. Any person rightfully entitled to an office or franchise may being an action in his own name against the person who has usurped, intruded into, or who holds or exercises the same.

think twice before defeating a claim brought pursuant to I.C. § 6–602 solely on the basis of the technical nuances of the antiquated writ of *quo warranto*. Indeed, in *Taylor v. Beneficial Protective Ass'n*, 60 Idaho 587, 94 P.2d 787 (1939), we held that some of the procedural and technical requirements of the common law writ of *quo warranto* were not applicable to an action brought under I.C. § 6–602 (then § 9–602).

I believe therefore that we should avoid placing undue emphasis on the common law origins of this statutory action, and instead determine whether, under the language of the statute, the state is entitled to the relief it requests. It seems to me the ultimate issue is whether the respondent held his office with authority of law. The narrower issue is whether a candidate who is disqualified at both the time of election and the time of taking the oath of office can cure the disqualification during his term of office. I think that issue is fairly well settled in Idaho. "Under Idaho law, a candidate may be elected to an office while under a disqualification, provided such disqualification can be and is removed before the new term of office begins." *Jordan v. Pearce*, 91 Idaho 687, 691, 429 P.2d 419, 423 (1967). *See Bradfield v. Avery*, 16 Idaho 769, 102 P. 687 (1909). The majority rule is in accord. *E. g., Cox v. Starkweather*, 128 Colo. 89, 260 P.2d 587 (1953); *Hulgan v. Thornton*, 205 Ga. 753, 55 S.E.2d 115 (1949); *Lee v. Byrd*, 169 Ga. 622, 151 S.E. 28 (1929); *McAlmond v. Meyers*, 262 Or. 521, 500 P.2d 457 (1972); *Commonwealth ex rel. Kelley v. Keiser*, 340 Pa. 59, 16 A.2d 307 (1940); *Slater v. Varney*, 136 W.Va. 406, 68 S.E.2d 757 (1952), *upheld on rehearing*, 70 S.E.2d 477 (1952). *Contra, Widincamp v. Wood*, 167 Ga. 57, 144 S.E. 900 (1928). *See generally* Annots., 88 A.L.R. 812, 831 (1934) and 143 A.L.R. 1026, 1031 (1943). As the Supreme Court of West Virginia put it, a candidate "must remove his disqualification before the beginning of the regular term of that office . . . and that if he has failed to do so his ineligibility to that office becomes permanent and irremovable from and after that time." *Slater v. Varney*, 68 S.E.2d at 770. If respondent was ineligible at the time he was sworn into office, he held that office without lawful authority, *even on the day that the state filed this action.*

I am also troubled by the majority's disposition of the issue concerning attorney fees. It is true that Gooding County has already paid the attorney fees awarded to respondent by the court below. However, I must emphatically disagree with the Court's conclusion that the appellant has therefore acquiesced in that portion of the judgment and lost its right to appellate review. As I.C. § 6–602 points out, this action is brought "in the name of the people of the state." The appellant in this case is the State of Idaho on behalf of all the people. Gooding County was not a party. Whether or not the county paid the attorney fees, the state has brought this appeal and the state has done nothing to acquiesce in that portion of the judgment awarding attorney fees to the respondent.

McFADDEN, J., concurs.