52 P.3d 863

John FLOYD, Leon Dance, Mindy Jo Collier f/b/o Mindy Jo Collier Trust, Petitioners–Respondents and Cross–Appellants,

v.

BOARD OF COMMISSIONERS OF BONNEVILLE COUNTY, Idaho, governing body of a political subdivision of the State of Idaho, Respondent–Appellant and Cross Respondent,

and

Idaho Department of Fish and Game, Intervenor–Appellant and Cross Respondent.

John Floyd, Leon Dance, Mindy Jo Collier f/b/o Mindy Jo Collier Trust, Petitioners–Respondents and Cross–Appellants,

v.

Board of Commissioners of Bonneville County, Idaho, governing body of a political subdivision of the State of Idaho, Respondent–Appellant and Cross–Respondent,

and

State of Idaho, Department of Fish and Game, Intervenor–Appellant.

Nos. 26774, 26808.

Supreme Court of Idaho, Boise, May 2002 Term.

Aug. 6, 2002.

McGrath, Mecham, Decker & Smith, PLLC., Idaho Falls, for appellants Bonneville County Commissioners. Stephen J. McGrath argued.

Millemann, Pittenger, McMahan & Pemberton, LLP, McCall, for respondents, Floyd, et al. Steven J. Millemann argued.

Hon. Alan G. Lance, Attorney General; Clive Strong, Deputy Attorney General, Boise, for Intervenor Idaho Department of Fish & Game. John R. Kormanik argued.

WALTERS, Justice.

The question before the Court is the legal status of Antelope Creek Road (ACR), located in the Antelope Valley area east of Idaho Falls. In this appeal following remand, Bonneville County (County) and the intervenor, Idaho Department of Fish and Game, (IDFG) seek review of the decision of the district court, which reversed the decision of the Board of County Commissioners and declared the ACR a private road. This Court vacates the decision of the district court and affirms the Bonneville County Commissioners' determination that ACR is a public road.

## FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

The Court's opinion in *Floyd v. Board of Comm'rs of Bonneville County*, 131 Idaho 234, 235–36, 953 P.2d 984, 985–86 (1998), sets forth the facts as they appeared at the time of the district court's original review of the Board's validation proceedings:

> The respondents (the Landowners) own a ranch (the property) in the Antelope Valley area east of Idaho Falls. They purchased this property on September 22, 1989, from the Farm Credit Bank of Spokane. Previously, this property was owned by the Weeks Brothers, Inc. This property is crossed by the Antelope Creek Road

(ACR), which has been in existence since the early 1900s.

There are two distinct segments of the ACR. The first segment is approximately 4.55 miles in length and is located directly north of the property. The status of this segment is not an issue in this appeal. The segment of the ACR in issue is the section which traverses the property previously owned by the Weeks Brothers, Inc. This road is considered to be part of the "loop." The "loop" consists of the road which runs south from the current Highway 26 and across the property, then continues west to connect with Highway 26. The ACR provides access to the Caribou National Forest, the Tex Creek Wildlife Management Area and other land owned by the State of Idaho.

On December 11, 1939, the Commissioners expressly abandoned the entirety of the disputed segment of the road. Then, in late 1949, the Weeks Brothers Inc. obtained a default judgment against Bonneville County ("County") quieting title in all the property owned by the Weeks Brothers, Inc.

In the early 1950s, the ACR was improved by County employees at the County's expense, at the decision of the Commissioners. After completion of improvements, the road was traversable by passenger vehicles. The County maintained the ACR from the early 1950s until 1972. During this period, the owners of the property also performed maintenance work on the road. Had the County graders not graded the ACR, and used the "loop," the graders would have had to backtrack out to Highway 26 to maintain the two connected roads. This would have added considerable time to the maintenance of the roads. The County stopped maintaining the ACR after 1972.

The ACR appeared on the Road Inventory Maps prepared by the Idaho Department of Transportation ("Transportation Department") in 1961 and 1971. It appeared on the map marked in green which indicated the road was "primitive." A "primitive" road was defined as "an unimproved route (on which there is no public maintenance)

usable by four-wheel vehicles and publicly traveled by small numbers of vehicles." Neither the 1961 nor 1971 maps is signed by the Commissioners or the County engineer. The first year the Transportation Department conducted the "Blue Roads" map system was 1977. This was the first formal request by the Transportation Department to the County to confirm the roads on the map were County roads. On the map, all roads colored blue were deemed County roads. When the map was submitted to the County the ACR was coded blue. After meeting with the Transportation Department, the Commissioners, the County Road and Bridge Supervisor, and the County Engineer, the road was marked in yellow, which is defined as "deleted or abandoned." From 1984 until 1990, the west segment of the ACR was deleted from the maps altogether.

In the late 1960s, gates were placed at the north and west entrances of the property. These gates generally remained closed and had to be opened and re-closed by members of the public who crossed the road. During this time frame, the County had a policy against closed gates on County roads. The gates remained on this road for over twenty years, although this road was not on the "Gated Roads" sheet that listed all gated roads that the County claimed were County roads.

In the early 1970s, the roads connected by the ACR were placed in different maintenance districts. In 1974, signs were placed on the property by the owners of the property, indicating that the road was private and that the County had refused to maintain the road. One of the signs remained in place until after the property was purchased by the Landowners in 1989. The County Assessor's Map shows that the owners of the property have been assessed on the full acreage without any reduction for a County road passing through the property. The road, however, continued to be used extensively by the public until 1989. The road was used to access State land, as part of an organized snowmobile race and for local farmers, among other things.

In preparation for the property to be sold, the Commissioners were asked to formally declare the disputed segment of the road as a County road. The Commissioners denied this request. In a meeting on November 15, 1989, the Commissioners acknowledged that the disputed segment of the road was abandoned and was a private road, although the County did not conduct a formal process of abandonment.

On May 29, 1991, the Commissioners instituted a validation proceeding as to the status of the ACR. After the hearing, the Commissioners validated the ACR as a public road.

The Landowners filed a petition for rehearing or reconsideration with the Board of County Commissioners in August of 1991. The Board denied a rehearing, but agreed to reconsider its decision based upon new evidence submitted by the Landowners with the petition. Incorporating its previous findings of fact and affirming its earlier conclusion that the ACR was a public road, the Board issued an order dated October 21, 1991. From this decision, the Landowners appealed to the district court.

On June 15, 1995, the district court ruled that the trial would be held *de novo* because of bias on the part of the Commissioners. The district court decided not to apply the newly enacted Section 40–208 of the Idaho Code governing the standard of review of a decision by a board of county commissioners. After a bench trial in early 1996, the district court held that the ACR never became a public road because of lack of proof of intent on the part of the State and the County and, in the alternative, that the road was subsequently abandoned in 1977. The County and the Idaho Department of Fish and Game as intervenors appealed to this Court.

On March 30, 1998, this Court held that the district court erred in holding a *de novo* hearing, as the statute limiting a district court's review of a validation hearing was procedural in nature and thus could be applied retroactively. *Id.* The Court vacated the decision of the district court and remanded the case for review pursuant to I.C. § 40–208. *Id.*

Pursuant to an order of the district court granting the parties' joint motion to be allowed to present additional evidence, the district court remanded the matter to the Board for a hearing. On July 30, 1999, the Board issued revised findings of fact, conclusions of law and a new order validating the ACR as a public road.

On October 7, 1999, the Landowners filed a petition for judicial review of the Board's decision. The IDFG, an intervenor, also petitioned for review of the decision, challenging the requirement, as found by the Board, that the owner of prescriptive public rights must prove the County's intent to create prescriptive rights in a road as an element of I.C. § 40–202(3).

On March 1, 2000, the County filed a motion to dismiss for lack of jurisdiction, contending that the appeal from the Board's 1991 decision was untimely because there existed no statutory authority providing for reconsideration by the Board and thus no basis to extend the time for filing an appeal from the original decision. The district court denied the motion to dismiss and held that: (1) I.C. § 31–828 was broad enough to confer on the Board authority to reconsider its decisions; (2) the Board is presumed to have acted in conformity with the law; and (3) Rule 14, I.A.R., extends the time for filing an appeal by virtue of a motion for reconsideration.

On July 4, 2000, the district court issued its memorandum opinion reversing the Board's order finding the ACR to be a public road. The district court concluded that the Board's decision holding public rights in ACR had been established by prescription: (1) violated the Landowners' rights to due process; and (2) was clearly erroneous and, as a result, not a decision that would have been made by an objective decision-maker. The district court reversed the Board's decision pursuant to I.C. § 40–208(7)(a) and (e), and declared the ACR to be a private road and not subject to public use. The Board and IDFG appealed, and the Landowners have cross-appealed.

## STANDARD OF REVIEW

■ A final decision or order of the district court on judicial review of an agency decision is appealable as a matter of right. I.A.R. 11(f). In a subsequent appeal from a district court's decision in which the district court was acting in its appellate capacity under the Administrative Procedure Act (APA), the Supreme Court reviews the agency record independently of the district court's decision. *Ferguson v. Board of County Comm'rs for Ada County,* 110 Idaho 785, 718 P.2d 1223 (1986). Decisions made by a board of county or highway district commissioners are subject to judicial review pursuant to I.C. § 40–208. The review shall be conducted by the court without a jury and shall be confined to the record. I.C. § 40–208(6). The court shall not substitute its judgment for that of the commissioners as to the weight of the information on questions of fact. The court may affirm the decision of the commissioners or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the commissioners' findings, inferences, conclusions or decisions are:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the commissioners;

(c) Made upon unlawful procedure;

(d) Affected by other error of law;

(e) Clearly erroneous in view of the reliable, probative and substantial information on the whole record; or

(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

I.C. § 40–208(7).

## I.

### THE SUPREME COURT HAS JURISDICTION TO HEAR THIS APPEAL

■ The County asserts that the district court should have granted its motion to dismiss for lack of jurisdiction. The County argues that it was error for the district court

to extend the time for filing the appeal because no statute existed expressly authorizing the Board to entertain a reconsideration motion. The Landowners' notice of appeal that was filed subsequent to the decision on the reconsideration motion was beyond the time for appeal from the Board's initial decision on July 9, 1991, and thus inadequate to confer jurisdiction upon the district court to hear the appeal from the Board's decision.

▪ Requirements for timely filing and service of a petition for review are jurisdictional. Absent compliance with this statutory requirement, a district court has no jurisdiction to review a final determination of the district board. *Lindstrom v. Dist. Board of Health Panhandle Dist. I,* 109 Idaho 956, 712 P.2d 657 (Ct.App.1985). *See also Freeman v. Sunshine Mining Co.,* 75 Idaho 292, 271 P.2d 1022 (1954) (requirements of statutes relative to perfecting an appeal in workmen's compensation cases are mandatory and jurisdictional, and failure to comply therewith deprives the court of jurisdiction); *State v. James,* 112 Idaho 239, 731 P.2d 234 (Ct.App. 1986) (requirement of perfecting an appeal within the forty-two day time period is jurisdictional, and appeals taken after expiration of the filing period must be dismissed). The filing of a petition for review of a board's decision within the time prescribed by statute is a jurisdictional matter that cannot be waived by the parties. *Stout v. Cunningham,* 29 Idaho 809, 162 P. 928 (1917).

At the time of the Board's July 9, 1991, decision validating the ACR as a public road, any person aggrieved by any act, order or proceeding of the board could appeal "any time within twenty days after the first publication or posting of the statement, as required by I.C. § 31–819." I.C. § 31–1509. Clearly, the notice of appeal to the district court was not filed within twenty days of July 9, 1991, but only after the Board's decision on the Landowners' request for reconsideration. For the appeal to be deemed timely then, jurisdiction must lie for the Board to reconsider its original decision.

Idaho Code § 40–203A confers upon the Board the authority to confirm the status of public highways through validation proceedings: however, the statute makes no provision regarding a motion for reconsideration by the Board once the Board has entered its order either granting or denying the validation. The statute prescribes a hearing after notice and an order discontinuing or completing the validation proceedings. A separate statute, I.C. § 31–819, provides that all of the acts and proceedings of a board of county commissioners be published in a monthly statement to give notice to the public. The only relief provided from the Board's decision is the right to appeal, which, under I.C. § 31–1509, must be filed "any time within twenty days after the first publication or posting of the statement."

▪ Generally, a board of county commissioners has only such powers as are expressly or impliedly conferred upon it by statute. *Prothero v. Board of County Comm'rs,* 22 Idaho 598, 127 P. 175 (1912). In ruling on the County's motion to dismiss, the district court determined that I.C. § 31–828 was broad enough to confer authority on the Board to reconsider its decision. The following principles justifying reconsideration are also relevant:

> Even apart from any statutory provision expressly authorizing modification, administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative agency, as where the determinations are not final, but interlocutory, incomplete, provisional, or not yet effective, or where the powers and jurisdiction of the administrative agency are continuing in nature. While a proceeding is pending before a tribunal, there is no limit to the power of such tribunal to review any rulings it may have made, or to permit a reargument upon any proposition involved. When the jurisdiction of an administrative agency has terminated, there is no longer any power to reconsider or change the determination, and even a statutory provision for continuing jurisdiction may be held to end when the matter is no longer pending before the agency.

2 Am.Jur.2d, *Administrative Law* § 522

**724**

(1994).[1]

Continuing its analysis on the jurisdiction question, the district court concluded that the time in which the Landowners were required to file their appeal was enlarged by the filing of their reconsideration motion. Citing *Eastern Idaho Health Serv. v. Burtenshaw*, 122 Idaho 904, 841 P.2d 434 (1992), the district court held that, pursuant to I.A.R. 14, the time for filing an appeal was temporarily suspended by the filing of the request for reconsideration and commenced to run anew on the date of the denial of the reconsideration request. Applying *Burtenshaw*, the district court ruled that the notice of appeal filed after the order on reconsideration but before the first publication date, as prescribed by I.C. § 31–1509 (1991), was timely. Viewed in another way, it appears that the time to appeal commenced upon entry of the Board's final order ruling on the Landowner's timely request for reconsideration.

We uphold the district court's ruling, which was based upon an accurate reading of *Burtenshaw*, and thus we hold the district court had jurisdiction to hear the appeal from the Board's decision declaring the ACR to be a public road. Nevertheless, we are convinced that *Burtenshaw* was erroneously decided with respect to its reliance on I.A.R. 14. We expressly overrule *Burtenshaw* prospectively to the extent that an appellate rule, which governs only *appellate* proceedings, was applied to extend the period for filing a petition for judicial review of an agency's decision by the district court.

## II.

### THE BOARD'S FINDING OF A PUBLIC PRESCRIPTIVE RIGHT IS SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

■ The County argues that there was substantial evidence to support the Board's findings that the ACR was a public road. The County maintains the findings should not have been disturbed by the district court,

and that the district court erred in reversing the Board's 1999 decision.

■ Idaho Code § 40–202 sets forth the statutory requirements for determining whether a public highway exists. Under the statute, a public road may be acquired by prescription: (1) if the public uses the road for a period of five years, and (2) the road is worked and kept up at the expense of the public. I.C. § 40–202(3). The burden rests on the County to prove by a preponderance of the evidence that public rights were established in the disputed segment of the road after its abandonment in December of 1939. *See e.g., Roberts v. Swim*, 117 Idaho 9, 784 P.2d 339 (Ct.App.1989). Regular maintenance and extensive public use are sufficient to establish the existence of the public status of the roadway. *Id.* at 16, 784 P.2d at 346.

The evidence is clear that the road, from the time it was merely a wagon trail in the early 1900's, came to be known as the "loop," which provided access to public land and waters in the Caribou National Forest and the Tex Creek Wildlife Management Area, and to land owned by the State of Idaho. The evidence shows that from 1949, when the road was widened and improved, the road was regularly and continuously used by the public for fishing, hunting, camping, and other recreational activities. In 1995, the parties stipulated to the fact that the road was regularly and continuously used by the public for at least five years.

■ In addition to proof of use, the Board had to decide whether there was evidence of maintenance by a public agency. "Such maintenance need only consist of work and repairs that are reasonably necessary; it need not be performed in each of five consecutive years nor through the entire length of the road." *Id., citing State v. Nesbitt*, 79 Idaho 1, 310 P.2d 787 (1957). Accordingly, we have carefully examined the record to determine whether the evidence supports the Board's finding that the County maintained and improved the road for a period of ap-

---

1. The adoption of I.C. § 40–208 in 1993 specifically allows rehearing, thus resolving the issue for the future.

proximately twenty-five years from 1949 to 1974.

Testimony regarding maintenance on the road consisted of descriptions of significant improvements done by the County, at county expense, including widening, realigning, adding a new roadbed and drainage in late 1949, and reconstructing portions of the road between 1952 and 1960. During that same eight-year period, the evidence showed that the County had graded the road annually or semiannually as required. The County continued to maintain the road, which maintenance was supplemented by work done by the Weeks Brothers, using their own equipment for their purposes, until 1974, when the level of maintenance by the County became the subject of a dispute between the County and the Weeks Brothers.

The Landowners contend that without the Weeks' effort, the County maintenance could not be said to have been performed at necessary times and places. *See Pugmire v. Johnson*, 102 Idaho 882, 643 P.2d 832 (1982) (requiring a showing that the public agency's maintenance of the road was performed at necessary times and places). They argue that the County failed to establish that maintenance of the disputed segment of the road was comparable to that done on the other two segments of the road. They also argue that the maintenance was "as necessary," in the face of testimony from users of the road that: (a) they never attempted to travel it in early spring when it was wet, or during the winter, and (b) the basic, day-to-day work which made the road traversable by the general public was done by the Weeks family. These additional tests, however, are in excess of the statutory requirements.

The criteria to determine a public road has been stated as follows: "When a right-of-way has been used by the general public for a period of five years and has been maintained at public expense, the right-of-way becomes a public highway." *State ex rel. Haman v. Fox*, 100 Idaho 140, 146, 594 P.2d 1093, 1099 (1979). *See also Meservey v. Gulliford*, 14 Idaho 133, 93 P. 780 (1908) (public use of a highway for the statutory period and keeping it in repair at public expense is all that is necessary to establish a highway by prescrip-

tion). There is no requirement that the County *exclusively* maintain the road and no mandated level of maintenance other than "as necessary."

Accordingly, we conclude that there is substantial, competent evidence in the record to support the Board's findings. We therefore affirm those findings of fact.

## III.

## THE LANDOWNERS' DUE PROCESS RIGHTS WERE NOT VIOLATED DESPITE THE EXPRESSED BIAS OF ONE OF THE THREE COMMISSIONERS

■ The district court reversed the 1999 decision of the Board on an alternate basis, concluding that the Landowners' constitutional rights had been violated in the validation proceedings, which included a biased decision maker. The County argues that it was error for the district court to decide the issue of bias, which had not been preserved for appeal.

In their brief on remand, the Landowners argued for disqualification of the *entire* Board for the 1999 validation proceedings, claiming the Board as constituted was biased. Our review of the record does not reveal any formal motion to that end or to exclude an individual commissioner, Roger Christensen, who had spoken publicly regarding the ACR and its public status prior to the 1999 hearing. Counsel did make an argument regarding the Board's participation in the review, suggesting that Christensen not sit on the case, and we deem the argument sufficient to have preserved the issue of bias for review in this appeal.

Commissioner Christensen definitely indicated his predetermination on the question of the public nature of the ACR in advance of the 1999 public hearing on the validation proceedings. His actual bias, therefore, rendered his participation in the due process hearing constitutionally unacceptable, *see Johnson v. Bonner County School District No. 82*, 126 Idaho 490, 887 P.2d 35 (1994), but does not automatically invalidate the 1999 decision of the Board.

The County argues that the district court's outright reversal of the Board's decision was unwarranted because the bias of Commissioner Christensen resulted in harmless error. As an alternative to nullifying the decision, the County urges that Commissioner Christensen's vote simply be ignored, as the two other commissioners constituted a quorum sufficient to decide the validation proceedings.

To avoid the appearance of impropriety and to assure impartial decision-making, however, it is the role of the Court to determine the effect of a conflicted vote:

> Initially, the court must determine whether a member with a disqualifying interest cast the decisive vote. If so, the ordinance must be invalidated. If the ordinance would have passed without the vote of the conflicted member, the court should examine the following three factors: (1) whether the member disclosed the interest or the other council members were fully aware of it; (2) the extent of the member's participation in the decision; and (3) the magnitude of the member's interest.

*Griswold v. City of Homer,* 925 P.2d 1015 (Alaska 1996). The district court applied the reasoning from *Griswold* to the facts of this case, after acknowledging that *Griswold* was adopted in the context of ordinance-promulgation by a zoning commission. As the district court found, the Board's decision holding the ACR to be a public road was unanimous. The district court, however, determined there was an appearance of impropriety due to Christensen's full participation in the hearing and his significant interest in the outcome of the hearing, such that under the rule in *Griswold,* reversal of the Board's decision was required.

There is no proof that the other two commissioners were biased, and the evidence is that they were fully aware of Christensen's views. The Board's decision was unanimous; thus Christensen's vote was not the "swing vote." We concur with the district court that Commissioner Christensen's bias disqualified him to sit as on the validation proceedings as a member of the Board. We conclude, however, that due process would be satisfied, under the circumstances, by simply disregarding Commissioner Christensen's vote rather than nullifying the decision and remanding the case for rehearing or reconsideration by an entirely new body of commissioners.

## IV.

### QUASI–ESTOPPEL DOES NOT APPLY

■ The Landowners asserted, on quasi-estoppel grounds, that the County was barred from claiming the ACR was a public road once the County stopped maintaining the road sometime in 1974. In its decision, the district court determined that the Board's failure to address the issue of quasi-estoppel was reversible error. The County argues on appeal that any failure by the Board to consider the Landowners' quasi-estoppel claim was harmless, as it would not have affected the outcome of this case.

■ The elements of the doctrine of quasi-estoppel have been defined as follows:

> [I]t precludes a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him or her. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit. The act of the party against whom the estoppel is sought must have gained some advantage to himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position.

*Eastern Idaho Agricultural Credit Ass'n v. Neibaur,* 133 Idaho 402, 410, 987 P.2d 314, 322 (1999). The Landowners claimed that by discontinuing maintenance of the ACR in 1974 the County manifested its intent that the road no longer be a public road. A quasi-estoppel theory does not apply to bar the County from further asserting the public nature of the road. Moreover, evidence that the County ceased to provide maintenance after the road was established as a public road is inadequate to alter the character of the road. To divest the public's rights in the ACR, the County was required to follow a specific statutory procedure, and quasi-estop-

pel cannot circumvent the requirements of the law for abandonment of public prescriptive rights in a road. *See* 39 Am.Jur.2d, *Highways, Streets, and Bridges* § 167 (1999). Nor may the defense of estoppel be applied against the state in matters affecting its governmental or sovereign functions. *See Federal Crop Ins. Corp. v.* Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). We find no error in this regard.

We take this opportunity, however, to comment on the district court's erroneous conclusion that "intent as it relates to use and maintenance is an element that must be proved in order to establish the public acquisition of prescriptive rights in a road under I.C. § 40–202(3)." There is no requirement of intent to create a public road by prescription in the statute. We have previously held that the claimant's state of mind is irrelevant in determining whether a private prescriptive easement has been established; the subjective belief of the claimant is not controlling. *Cardenas v. Kurpjuweit,* 116 Idaho 739, 779 P.2d 414 (1989). Relevant to a county or a private person obtaining a declaration that a road is a public highway, the primary factual questions are the frequency, nature and quality of the public's use and maintenance. *Tomchak v. Walker,* 108 Idaho 446, 700 P.2d 68 (1985). It is the fact of the maintenance and the fact of the use by the public that creates the public easement. The intent of the county in maintaining a road that is used by the public is not material, except to establish that the county was performing maintenance that was intended as a gratuity to the landlord and not for the purpose of creating a public easement. *See id.* Otherwise, the intent of the county is immaterial.

## V.

## CROSS–APPEAL ISSUES

### THE ACR WAS NOT ABANDONED AS A MATTER OF LAW

The Board found that, subsequent to the express abandonment of the road in 1939, public rights were recreated in the ACR pursuant to I.C. § 40–202(3). The Board also found that those public rights had not later been abandoned, a finding with which the district court on review agreed. The Board explained its conclusions as follows:

N. Idaho Code § 40–501 provides that the Board of County Commissioners may by "proper ordinance" abolish or abandon such highways that are unnecessary. An abandonment can be effectuated by County commissioners formally enacting an ordinance. *Nicolaus v. Bodine,* 92 Idaho 639, 448 P.2d 645 (1968). The term "ordinance" means any formal action by the County commissioners or highway district commissioners that is publicized to the residents of the County where the road is located.

O. Former Idaho Code § 40–104 provided that a road that was not worked on or used for a period of five (5) years ceases to be a highway. In 1963, Idaho Code § 40–104 established that a road which was established by prescription not worked or used for a period of five (5) years ceases to be a highway for any purpose. It further provided that in the case of roads furnishing public access to public lands, State or Federal and/or public waters are abandoned as authorized by the commissioners. In 1986, the state legislature adopted Idaho Code § 40–203 which provided specific procedures to be followed by a County for the abandonment of public roads.

P. Idaho Code § 40–501 must be read harmoniously with then existing Idaho Code § 40–104. *See State v. Seamons,* 126 Idaho 809, 811, 892 P.2d 484, 486 (Ct.App. 1995). Statutes which are *in pari materia* must be construed as one system. *See City of Sandpoint v. Sandpoint Independent Highway District,* 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994). In construing Idaho Code § 40–501 and Idaho Code § 40–133 harmoniously, an ordinance or "formal action" must be taken in order to abandon a public road. There has never been a "formal action" or ordinance, or a finding by the County that the road was abandoned. Therefore, the road was not abandoned after the County created public rights thereon.

The Landowners assert that the Board's decision on the question of abandonment of

728

the road is contrary to evidence that the County deleted the ACR on its county road maps and inventories and did not treat the ACR from the mid–1970's as part of its road system.

■ Upon establishment of a public road by prescription, the burden shifts to the opponents of the public road to show a subsequent abandonment or extinguishment of those rights. The parties stipulated that no petition for abandonment of the ACR was of record in the documents of Bonneville County and that no formal action to abandon the road occurred.

The Landowners essentially argue that there was abandonment of the road by implication because no evidence of formal abandonment exists. The Landowners' argument that roads may be informally abandoned by implication is not persuasive. See *Taggart v. Highway Bd.*, 115 Idaho 816, 771 P.2d 37 (1989); *Nicolaus v. Bodine*, 92 Idaho 639, 448 P.2d 645 (1968). The Landowners' rationale ignores the principle that the public, not the County, is the beneficiary of the doctrine of prescriptive rights and that the County cannot surrender those rights except by strictly adhering to the procedures required by law. As this Court has explained:

When a highway or road is once established by prescription, the establishment vests in the public an easement in, or right to use, the land over which the road runs for highway purposes; and *the public cannot be divested of this right save by vacation or abandonment of the highway in the manner prescribed by law.*

*State v. Nesbitt,* 79 Idaho 1, 6, 310 P.2d 787, 790–91 (1957) (emphasis added). The principle of required formal abandonment was reaffirmed in *French v. Sorensen,* 113 Idaho 950, 751 P.2d 98 (1988), *overruled in part by Cardenas v. Kurpjuweit,* 116 Idaho 739, 779 P.2d 414 (1989), when this Court held:

However, since 1963 the statute governing abandonment and vacation of county roads, I.C. § 40–203, has provided that roads that furnish public access to state or federal public lands or waters cannot be obstructed without first petitioning the county commissioners or highway district. The commissioners having jurisdiction must

take some affirmative action before abandonment is complete. . . .

As a result, private landowners by obstructing public access to public lands or waters, act at their peril unless the detailed requirements of our statutes are satisfied strictly.

113 Idaho at 958–59, 751 P.2d at 106–07 (citations omitted, emphasis added). Once established as a public road by prescription under I.C. § 40–202, the ACR could be abandoned only by compliance with the procedures specified by governing statutes. Those requirements included non-use and non-maintenance of the road for five years, I.C. § 40–104, Board action by proper ordinance abolishing or abandoning the road as unnecessary, I.C. § 40–501, and a petition to the Board for the action together with a public hearing on the petition, I.C. § 40–1614.

It is undisputed that no petition was ever filed requesting abandonment of the ACR. No notice of any hearing for abandonment was ever published. No hearing was held. No decision to formally abandon the road was ever entered by the Board nor was any notice of a decision in that regard ever published. Affected persons were never given notice or opportunity to be heard or to appeal any alleged decision to abandon ACR.

We reject the Landowners' argument that roads may be informally abandoned by implication. We hold that the Board correctly concluded that the public rights created in the ACR were not abandoned in the manner prescribed by law.

## VI.

### THE LANDOWNERS' CHALLENGE TO THE DENIAL OF COSTS BY THE DISTRICT COURT IS MOOT

In reversing the decision of the Board, the district court ruled that the Landowners were entitled to costs as the prevailing party on the appeal from the decision of the Board. The Landowners submitted their memorandum of costs to the district court, but another district judge assigned to the case denied the Landowners' request for costs based on his interpretation of I.C. § 12–117. Because we vacate the district court's decision and affirm the Board's holding that the ACR is a public

road, the cross-appeal issue raised by the Landowners regarding the denial of costs is moot.

## CONCLUSION

The district court did not err in denying the County's motion to dismiss the appeal on jurisdictional grounds. We conclude that there exists in the record substantial, competent evidence of County maintenance and public use of the road for the statutory five-year period to support the Board's finding that public rights were established in the ACR. Despite evidence that the maintenance stopped after a time, we hold that the ACR was never abandoned pursuant to statute. Accordingly, we vacate the decision of the district court regarding abandonment and affirm the Board's decision holding the ACR to be a public road.

Costs on appeal are awarded to the respondents, Bonneville County and Idaho Department of Fish and Game, as the prevailing parties. No attorney fees on appeal are awarded.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.